UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHRISTOPHER DENT,
    Plaintiff,

vs.                                                        03-1153

DONALD SNYDER, et. al.,
    Defendants.

## ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 32].

### BACKGROUND

The plaintiff originally filed this lawsuit pursuant to 42 U.S.C.§1983, the Federal Tort Claims Act, Title VII of the Civil Rights Act and various state law claims. The plaintiff had named eight defendants from the Illinois Department of Corrections.

On March 22, 2004, the court granted in part and denied in part the defendants' motion to dismiss the complaint. The court found the plaintiff had adequately alleged that the implementation of a grooming policy at Illinois River Correctional Center had: 1) violated his First Amendment rights; 2) violated his equal protection rights; 3) violated Title VII of the Civil Rights Act; 4) violated Illinois' Religious Freedom Restoration Act and 5) violated state tort law. The claims are against Illinois Department of Corrections Director Donald Snyder, Warden John Battles, Warden of Operations Victor Trancoso, Warden of Programs Richard Birkey, Major Matthew Rains and Superintendent John Dudek in their individual capacities only.

The plaintiff was also admonished in the March 22, 2004 court order that he must inform the court of what action he had taken to exhaust his administrative remedies with the Equal Employment Opportunity Commission with regard to his claims under Title VII of the Civil Rights Act.

### FACTS

The Plaintiff is a follower of the African Hebrew Israelite religion. The plaintiff says he practices his religion with the Nazerite vow; abstaining from certain foods and beverages; prayer; and practicing or studying the Torah. The plaintiff claims the Nazerite vow requires no cutting of his hair during the duration of the vow. In 2002, the defendants state that the plaintiff had not officially informed the Department of Corrections that he was a follower of the African Hebrew Israelite religion. The plaintiff says he sent a letter to Warden Birkey on April 22, 2004

asking to be designated as an African Hebrew Israelite. It is not clear whether that designation was ever made.

At the time of the incidents in the complaint, the plaintiff wore his hair in dread locks. He worked as a Tool Clerk in the Bakery and his job was to log tools in and out, ensure that tools were clean and take care of time cards.

In January of 2002, a Warden's Bulletin was released that concerned grooming. The Bulletin stated that an individual grooming policy could be imposed when an inmate's hair created a security risk or a health or sanitation problem. At the time of the incidents in the complaint, an Institutional Directive stated that security risks include occasions were:

> 1) The hairstyle impedes or prevents staff from conducting a thorough search of the hair for contraband,
> 2) Contraband hidden in the hair may not be detected,
> 3) Contraband hidden in the hair may injure staff attempting to search the hair, or
> 4) The hairstyle signifies a security threat group affiliation.

The defendants state that in their experience, inmates have been known to hide various objects in their hair including razor blades, keys, glass, cigarettes, drugs, money and needles. Therefore, thorough searches are needed because certain items cannot be detected by using a metal detector. The defendants state that non-metallic contraband such as shards of glass or drugs obviously do not show up with a metal detector.

The defendants further state that searching inmate's hair is done on a case by case basis. Caucasian inmates with long hair often wear their hair either free flowing or in ponytails. The defendants state that when it is time to strip search these inmates, the inmate must take down the hair so it can be adequately searched. The defendants claim that hair must be taken down from braids or deadlocks in order to be safely searched. (Bir. Aff, para. 17, Rains Aff, para 16, Dudek Aff., para 16) "Cutting hair, if a hairstyle is too thick to be taken down, is the only plausible way to meet vital security and safety concerns." Id.

Defendant Birkey says he spoke with the plaintiff on May 23, 2002, about a letter the plaintiff had written to the Deputy Director concerning the possibility of cutting his dread locks. The plaintiff was told about the new directives and the fact that they would become effective on September 1, 2002. Birkey told the plaintiff that the directive would impact him because he wore his hair in deadlocks.

Defendant Rains says he also spoke with the plaintiff about the new security directive. Rains says he did not give the plaintiff an order to cut his hair, but did explain that officers could not adequately search deadlocks. Rains claims he told the plaintiff he would have an opportunity to cut his hair if he wished.

Defendant Dudek says he spoke with the plaintiff about the new Institutional and Administrative Directives concerning security and hair. Dudek told the plaintiff that the new rule would affect the plaintiff's hair because he had dread locks. Dudek says he told the plaintiff that his hair posed a safety and security risk, and also posed a potential sanitation risk. Dudek says on May 28, 2002, he told the plaintiff that he would have to cut his hair or be terminated from his job. The defendant states that he again advised the plaintiff that his hair posed a safety and sanitation risk on May 30, 2002. The plaintiff stated that he would not cut his hair, and Dudek terminated the plaintiff from his job.

The plaintiff says his hair was clean and fit completely under a hair net. He had never had complaints about any sanitation risk with his hair. The plaintiff maintains that no one ever gave him an order to cut his hair, and he was never given 24 hour notice that he must cut his hair or lose his job. The plaintiff says as proof that he was never given a direct order to cut his hair, he also never received any disciplinary ticket based on failure to cut his hair. (Plain. Response p. 11) Nonetheless, when Defendant Dudek asked the plaintiff about his hair on May 30, 2002, the plaintiff chose not to cut his hair.

Defendants Rains, Birkey and Dudek say at the time of the incident, they were not aware of any requirement that an African Hebrew Israelite was prevented from cutting his hair for religious reasons. The plaintiff maintains that the defendants did know the plaintiff's religious affiliation and that he was required not to cut his hair.

Although neither side clarifies this point in their arguments, the plaintiff in his deposition admits that he was never forced to cut his hair. And after the plaintiff lost his job in Bakery, he was immediately hired as a second shift porter. The plaintiff says he was forced to give up the job he wanted and his visitation priviledges were affected. (Plain. Depo, p 29) The plaintiff does not given specific incidents of how his visitation privileges changed. The plaintiff says he was threatened with disciplinary action if he did not cut his hair, but does not articulate any disciplinary measures that were taken against him beyond the loss of his job.

The plaintiff also admits that he did not exhaust his administrative remedies for his claims pursuant to Title VII of the Civil Rights Act. (Plain. Depo, p. 75-76)

### III.  LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. Id.

A party moving for summary judgment initially has the burden of showing the absence of

any genuine dispute of material fact based on the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970); Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

## IV.  ANALYSIS

A.  TITLE VII OF THE CIVIL RIGHTS ACT.

The plaintiff was advised that before he could bring his claim pursuant to Title VII of the Civil Rights Act he must first file a complaint with the Equal Employment Opportunity Commission and receive a right-to-sue letter. *See* McCaslin v. Cornhusker State Industries, 51 F.3d 277, 1995 WL 141732 (8th Cir. Jan 19, 1995). The plaintiff has failed to provide any evidence that he took this step. Therefore the court will dismiss the plaintiff's claim pursuant to Title VII.

B. FIRST AMENDMENT

The defendants argue that the plaintiff has failed to demonstrate that the grooming policy in this case violated the plaintiff's First Amendment right to the free exercise of his religion. Prisoners do not forfeit their First Amendment rights upon incarceration. Meachum V. Fano, 427 U.S. 215, 225 (1976). However, a restriction on the plaintiff's practice of his religion is still valid if the defendants can demonstrate that the restriction was reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); *citing* Turner v. Safley, 482 U.S. 78(1987). [1]  Such interests can include inmate security and the proper allocation of limited prison resources. Id. at 348, 352-530. The Court of Appeals for the Seventh Circuit has identified several factors that can be used in applying the "reasonableness" standard:

> 1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;
> 2. whether there are alternative means of exercising the right in question that remain available to prisoners;
> 3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and
> 4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

---

[1] *See* Siddiqi v. Leak, 880 F.2d 904, 909 (7th Cir.1989)(Turner test applies equally to policy decisions of prison officials).

Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir.1991).

Courts have long recognized that there are valid penological reasons for restricting hair length. *See* Pollack v. Marshall, 845 F.2d 656 (6th Cir.1988) ; Reed V. Faulker, 842 F.2d 960, 963 (7th Cir. 1988); Brightly v. Wainwright, 814 F.2d 612, 613 (11th Cir.1987); Watts v. Dugger, 484 U.S. 944, 108 S.Ct. 332 (1987); Capoeman v. Reed, 754 F.2d 1512, 1512-13 (9th Cir.1985); Hill v. Blackwell, 774 F.2d 338 (8th Cir.1985); Wilson v. Schillinger, 761 F.2d 921, 928 (3d Cir.1985) Dreibelbis v. Marks, 742 F.2d 792, 795 (3d Cir.1984).

The defendants in this case state that the grooming policy was implemented to deal with sanitation and security issues. The plaintiff was given both reasons for the need to cut his hair. The plaintiff held a job in the Bakery Department which obviously dealt with food and therefore sanitation would be an important issue. However, the defendants seem to argue that security was a more important factor. The plaintiff wore his hair in dread locks and he worked with "tools" in his job. The defendants state that it is easier to hide items in dread locks and it is a safety concern for officers who try to search the hair.

The defendants have stated a valid penological reason for demanding that the plaintiff either cut his hair or lose his bakery job. While the plaintiff argues his hair was not dirty and he wore a hairnet, he has failed to demonstrate that there was no reasonable relationship between the grooming policy and sanitation and security concerns. In addition, the court notes that the plaintiff was never forced to cut his hair, and was immediately given a different job. Therefore, the plaintiff was still able to exercise his religion and was still able to maintain a prison job. The defendants' motion for summary judgement on the plaintiff's First Amendment claim is granted.

C. EQUAL PROTECTION

The defendants further argue that the plaintiff has failed to demonstrate that his equal protection rights have been violated. A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v. Dept. of Health and Social Serv., 716 F.2d 1167, 1171 (7th Cir. 1983)

The plaintiff has not presented any evidence to this court to support his equal protection claim. The only mention of this claim is the plaintiff's own conclusory allegations that the grooming policy was racially motivated.

D. DUE PROCESS

In his response to the motion for summary judgement, the plaintiff appears to be claiming that the loss of his prison job based on the grooming policy violated his due process rights. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived

him of a liberty or property interest created either by state law or the Due Process Clause itself. *See* Sandin v. Conner, 515 U.S. 472, 483-84(1995).  The Seventh Circuit has  determined that neither Illinois law nor the Due Process Clause itself affords prisoners a liberty or property interest in their jobs. Wallace v. Robinson, 940 F.2d 243 (7th Cir.1991)  Accordingly, the plaintiff's procedural due process claim fails.

E. STATE LAW

As for the remaining supplemental state law claims, a district court may decline to exercise its supplemental jurisdiction when it has disposed of all federal claims over which it has original jurisdiction. 28 U.S.C. § 1367(C)(3); O'Grady v. Village of Libertyville, 304 F.3d 719, 725 (7th Cir.2002). Having granted summary judgment on the only federal claims in this case, the court dismisses the remaining state law claims without prejudice.

**IT IS THEREFORE ORDERED that:**

> **1) The defendants' motion for summary judgement is granted. [d/e 32]   The court also declines to exercise supplemental jurisdiction over any intended state law claims.   The case is dismissed in its entirety. The parties are to bear their own costs.**
>
> **2)The agency having custody of the Plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**
>
> **4) The plaintiff is ordered to notify the clerk of the court of a change of address and phone number within seven days of such change.   Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**
>
> **5)The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Enter this 7th day of September, 2005.

s/ Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE
